**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

LESLIE BAAS; TRACY OSTEEN; and
DOYLE NAPIER,

        Plaintiffs,

v.                                         Case No. 6:15-cv-565-Orl-37KRS

MICHAEL A. FEWLESS; and JOHN
MCMAHON,

        Defendants.

## ORDER

This cause is before the Court on the following:

1. Motion for Summary Judgment by Defendants Michael Fewless and John McMahon (Doc. 39), filed June 23, 2016; and

2. Plaintiffs[] Leslie Baas, Tracy Osteen[,] and Doyle Napier's Response & Legal Memorandum in Opposition to Defendants[] Michael A. Fewless and John McMahon's Motion for Summary Judgment (Doc. 42), filed July 22, 2016.

## BACKGROUND

The instant action arises from a series of events that culminated on April 12, 2011, with Defendant Michael A. Fewless ("**Captain Fewless**") distributing the driver's license photographs ("**DL Photos**") of Plaintiffs Leslie Baas, Tracy Osteen, and Doyle Napier ("**Plaintiffs**") to members of the Florida Senate Judiciary Committee ("**Committee**"). (Doc. 1.)

As of April 2011, Captain Fewless served as captain of the governmental affairs

section of the Orange County Sheriff's Office ("**OCSO**"), a position which required him to work with state, local, and federal representatives concerning the passage of local, state, and federal legislation. (Doc. 39-1, pp. 6–7.) Captain Fewless spent three or four days each week in Tallahassee while the Florida Legislature was in session from the beginning of March to the beginning of May. (*Id.* at 7–8.) During these trips, he often testified before both houses of the Florida Legislature. (*Id.* at 8.) Captain Fewless also assisted the Florida Sheriff's Association ("**FSA**") with certain bills that came before the Florida Legislature. (*Id.* at 15.)

On April 11, 2011, while attending an FSA meeting, a discussion arose concerning a pending Florida Senate bill that, if passed, would permit the open carry of firearms in Florida ("**Bill**"). (*See id.* at 15.) During the meeting, one law enforcement officer remarked that many members of the "One Percenters Motorcycle Clubs"[1] possess concealed carry permits. (*Id.* at 16.) This revelation was shocking to Captain Fewless because, if the Bill passed, members of the One Percenters Motorcycle Clubs could openly carry their weapons. (*Id.* at 39.)

It is undisputed that law enforcement was vehemently opposed to open carry in Florida. (*Id.* at 15.) To assist in opposing the Bill, Captain Fewless asked John McMahon ("**Agent McMahon**"), an intelligence agent with the OCSO, for photos of One Percenters Motorcycle Club members to show to the Committee. (*Id.* at 16–17, 20, 41; *see also* Doc. 39-2, pp. 5, 11–13.) He told Agent McMahon that he wanted photos that would "put a different face on [the Bill] and wanted to shock the [C]ommittee." (Doc. 39-2, p. 29.)

---

[1] The One Percenters Motorcycle Clubs refers to a collection of motorcycle clubs, including the Outlaws Motorcycle Club. (*See* Doc. 39-2, p. 23.) Plaintiffs are members of the Outlaws Motorcycle Club. (*See id.* at 22–23.)

2

As requested by Captain Fewless, Agent McMahon selected twenty-two photos of One Percenter Motorcycle Club members who had concealed carry permits based, in part, on appearance. (*Id.* at 21, 26.) The photos chosen were either booking photos or DL Photos. (*Id.* at 15–16, 20–21.) Agent McMahon testified that he chose Plaintiffs' photos due to their leadership positions in the Outlaws Motorcycle Club.[2] (*See id.* at 22.)

Agent McMahon emailed the photos to Captain Fewless and the two discussed the general backgrounds of those pictured. (Doc. 39-1, p. 21.) Captain Fewless ultimately selected seven photos from the group that he thought personified the negative impact that open carry would have in Florida. (*See id.* at 43; *see also* Doc. 39-2, p. 26.)

The following day, Captain Fewless forwarded the e-mail containing such photos to Tim Cannon, the assistant director of the FSA, for printing and packaging. (Doc. 39-1, p. 26.) The packages contained only photos and no other identifying information. (*See* Doc. 39-6, ¶ 6.) Captain Fewless personally delivered such packages to each Committee member's office. (*Id.* at 37, 43; *see also* Doc. 39-6, ¶ 6.) He then testified before the Committee that the photos were exemplary of the type of people that law enforcement would have concerns about in the event that the Bill passed ("**Hearing**"). (*Id.* at 43–44.) Captain Fewless did not identify the people in the photos by name or address, nor did he actually present the photos at the Hearing. (Doc. 39-1, p. 14; *see also* Doc. 39-6, ¶ 6.)

On April 7, 2015, Plaintiffs filed a three-count complaint alleging that Captain Fewless and Agent McMahon ("**Defendants**") violated the Driver's Privacy Protection Act

---

[2] There is some dispute as to whether Captain Fewless knew at the time the photos were selected and used that they were Plaintiffs' DL Photos. (Doc. 39-1, p. 35; *see also* Doc. 39-2, pp. 13–14, 16.) However, Captain Fewless's knowledge is immaterial to the resolution of Defendants' Motion as Defendants do not appear to dispute that Plaintiffs' DL Photos were distributed to the Committee. (Doc. 39, pp. 10–11.)

3

("**DPPA**") by obtaining and disclosing each Plaintiff's DL Photo for an impermissible purpose. (Doc. 1, ¶¶ 40, 55, 70.) Defendants moved for summary judgment (Doc. 39), and Plaintiffs responded (Doc. 42). The matter is now ripe for adjudication.

## STANDARDS

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). As to issues for which the movant would bear the burden of proof at trial, the "movant must affirmatively show the absence of a genuine issue of material fact and support its motion with credible evidence demonstrating that no reasonable jury could find for the nonmoving party on all of the essential elements of its case." *Landolfi v. City of Melbourne, Fla.*, 515 F. App'x 832, 834 (11th Cir. 2012) (citing *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993)).

As to issues for which the nonmovant would bear the burden of proof at trial, the movant has two options: (1) the movant may simply point out an absence of evidence to support the nonmoving party's case; or (2) the movant may provide "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." *U.S. v. Four Parcels of Real Prop. in Green & Tuscaloosa Ctys.*, 941 F.2d 1428, 1438 (11th Cir. 1991) (citing *Celotex Corp.*, 477 U.S. at 325). "The burden then shifts to the nonmoving party, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006) (citing *Fitzpatrick*, 2 F.3d at 1115–17). "A factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"

*Four Parcels*, 941 F.2d at 1437 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The Court must view the evidence and all reasonable inferences drawn from the evidence in the light most favorable to the nonmovant. *Battle v. Bd. of Regents*, 468 F.3d 755, 759 (11th Cir. 2006). However, "[a] court need not permit a case to go to a jury . . . when the inferences that are drawn from the evidence, and upon which the nonmovant relies, are 'implausible.'" *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 743 (11th Cir. 1996).

## DISCUSSION

The DPPA "regulates the disclosure of personal information contained in the records of state motor vehicle departments." *Thomas v. George, Hartz, Lundeen, Fulmer, Johnstone, King & Stevens, P.A.*, 525 F.3d 1107, 1109 (11th Cir. 2008) (quoting *Reno v. Condon*, 528 U.S. 141, 143 (2000)); *see also* 28 U.S.C. § 2721(a).[3] Congress enacted the DPPA as part of the Violent Crime Control and Law Enforcement Act of 1994, amid mounting concerns over the criminal misuse of personal information, which was then readily accessible from state departments of motor vehicles. *See* Pub. L. No.103–322, tit. XXX; *see also Downing v. Globe Direct LLC*, 682 F.3d 18, 26 n.9 (1st Cir. 2012) (citing the congressional record). In so doing, Congress created a private cause of action against a person "who knowingly, obtains, discloses, or uses personal information from a motor vehicle record for a purpose not permitted." *See* 18 U.S.C. § 2724(a). In such action, the plaintiff bears the burden of establishing an impermissible purpose. *See Thomas*,

---

[3] The DPPA distinguishes personal information from highly restricted personal information, which includes an individual's photograph or image. *See* 18 U.S.C. § 2725(3), (4). The use of either type is permissible under 18 U.S.C. § 2721(b)(1). *See* 18 U.S.C. § 2721(a)(2).

525 F.3d at 1112.

Despite the general prohibition on disclosure, the DPPA provides fourteen exceptions which permit disclosure, including "use by any government agency, including any court or law enforcement agency, in carrying out its functions . . . ." ("**Government Function Exception**"). 18 U.S.C. § 2721(b)(1). The Government Function Exception was purposefully drafted with broad language to maintain law enforcement's "unrestricted access" and was not intended to "restrict or hinder law enforcement and crime prevention strategies." *Parus v. Kroeplin*, 402 F. Supp. 2d 999, 1006 (W.D. Wisc. 2005) (quoting the congressional record). As the Government Function Exception does not define a government agency function, such interpretation is a matter of federal law. *See Rine v. Imagitas, Inc.*, 590 F.3d 1215, 1223 (11th Cir. 2009). In this context, courts must "infer that Congress intended [undefined terms] to have their common and ordinary meaning, unless it is apparent from context that the disputed term is a term of art." *Garcia v. Vanguard Car Rental USA, Inc.*, 540 F.3d 1242, 1246 (11th Cir. 2008). The plain meaning of "function" is "the action for which a person or thing is specially fitted, used, or responsible or for which a thing exists; the activity appropriate to the nature or position of a person or thing." *Rine*, 590 F.3d at 1223 (quoting *Webster's Third New International Dictionary* 920 (3d ed. 1966)).

In view of the foregoing, the Court must evaluate the margins of the Government Function Exception. Here, Plaintiffs allege that Defendants' obtainment and disclosure of their DL Photos for use in lobbying is not a "function" as defined by the DPPA. (*See* Doc. 1, ¶¶ 40, 55, 70.) Asserting that lobbying is an activity within the bounds of the Government Function Exception, Defendants point to an OCSO General Order ("**Order**").

(Doc. 39, p. 9–10.) The Order provides that the Legislative and Governmental Affairs Section acts as the "liaison between the Sheriff's Office and various branches of Orange County, State of Florida and Federal Governments." (Doc. 39-7, p. 3; *see also* Doc. 39-6.) Plaintiffs contend that the absence of the word "lobbying" from the Order, establishes that the OCSO did not intend to authorize lobbying as part of a liaison's job. (*Id.* at 11–12.) Without divining the exact nature of the word "liaison," the Court is satisfied that it includes lobbying efforts. This comports not only with the broad language of the Government Function Exception, but also with the deference owed to Florida and the OCSO concerning the permitted activities of Defendants. *See Rine*, 590 F.3d at 1223; *see, e.g.*, Fla. Stat. § 11.045(1)(g) (describing a "lobbyist" as a person "principally employed for governmental affairs by . . . [a] governmental entity to lobby on behalf of that . . . governmental entity.")

Courts have routinely found that accessing and distributing driver's license records for more traditional law enforcement functions are within the bounds of the Government Function Exception. *See, e.g.*, *McQuirter v. City of Montgomery, Ala.*, No. 2:07-cv-234-MEF, 2008 WL 401360 (M.D. Ala. Feb. 12, 2008) (discussing the use of protected information to maintain criminal records, and disclose to the media to expose public safety issues or advise the public of information). While the instant action presents a less traditional law enforcement function—lobbying—it is no less legitimate. Plaintiffs' assertions to the contrary are unpersuasive and do not defeat summary judgment. Indeed, Defendants have established that they did not violate the DPPA because their conduct falls under the Government Function Exception, 42 U.S.C. § 2721(b)(1).[4]

---

[4] Based on its analysis of such exception, the Court finds that Defendants are

Footnote: "entitled to summary judgment without reference to the doctrine of qualified immunity."

## CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1. Motion for Summary Judgment by Defendants Michael Fewless and John McMahon (Doc. 39) is **GRANTED**.

2. The Clerk is **DIRECTED** to:

    a. Enter judgment in favor of Defendants Michael Fewless and John McMahon and against Plaintiffs Leslie Baas, Tracy Osteen, and Doyle Napier on Counts I, II, and III of the Complaint (Doc. 21);

    b. Terminate all pending motions; and

    c. Close the file.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on November 22, 2016.



ROY B. DALTON JR.
United States District Judge

Copies:

Counsel of Record

---

entitled to summary judgment without reference to the doctrine of qualified immunity.